**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DEVON PETWAY, | ) | CASE NO. 5:25-cv-2002 |
| | ) | |
| | ) | |
| Plaintiff, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| | ) | |
| MICHAEL DAILEY, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

Before the Court is a motion for judgment on the pleadings filed by defendant Summit County, Ohio ("Summit County") (Doc. No. 33), seeking to dismiss claims against it for municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), and violation of privacy rights under Ohio law. *Pro se* plaintiff Devon Petway's ("Petway") has not filed a response, and the time for doing so has passed. For the reasons stated below, Summit County's motion is **GRANTED**.[1]

## I. BACKGROUND

The following facts are taken largely from allegations in Petway's complaint. (Doc. No. 1 (Complaint).) On September 11, 2025, at approximately 11:43 a.m., Petway was seated outside

[1] The Court already dismissed the claims against Magistrate Michael Dailey ("Magistrate Dailey") on the grounds of judicial immunity. (Doc. No. 30 (Memorandum Opinion and Order).) Although Petway identifies Dailey as a "[j]udicial [a]ttorney" (Doc. No. 1, at 1), the Court follows its previous opinion by taking judicial notice that Dailey is a magistrate of the Summit County Court of Common Pleas. (*See* Doc. No. 30, at 2 n.3 (All page number references to the record herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system).)

the chambers of Judge Alison Breaux of the Summit County Court of Common Pleas.[2] (*Id.* at 2.) Petway was drafting motions to challenge certain procedural violations that she believed had occurred in a case she had pending before Judge Breaux. (*Id.*) These violations included the court's alleged failure to redact her protected medical information on the public docket. (*Id.*)

Petway then "attempted to present [her] motions" to Magistrate Dailey. (*Id.*) Magistrate Dailey "refused to accept" personal hand-delivery of the motions and told Petway that "all matters, including mediation and the status of [her] confidential medical records, would not be addressed until September 22, 2025." (*Id.* at 2.) Petway found that timeline "insufficient" and sought to file "an emergency motion to be heard immediately." (*Id.*)

Again, Magistrate Dailey did not accept personal hand-delivery of Petway's motion and, instead, summoned officers from the Summit County Sherriff's Office. (*Id.*) Deputy Mason of the Summit County Sherriff's Office "then entered, forcibly removed [Petway], dragged her across the courthouse, and caused her to be arrested and charged based on false allegations of disturbance."

---

[2] Petway alleges that she was seated outside Judge Breaux's chambers at the time in question. But Summit County asserts that Petway was, in fact, seated *inside* Judge Breaux's chambers (Doc. No. 33, at 3 n.2), and incorporates video footage previously filed by Magistrate Dailey in support of this assertion. (*Id.* (citing Doc. No. 16 (Manual Filing).) The Court notes that, while it can still consider this video to the extent it "blatantly contradict[s]" Petway's allegation that she was seated outside of chambers, *Bell v. City of Southfield, Michigan*, 37 F.4th 362, 364 (6th Cir. 2022), the Court need not do so because whether Petway was seated inside or outside of chambers has no effect on the Court's analysis. That said, the video shows that Petway was seated in Judge Breaux's outer chambers area (as opposed to her private chambers), and that a Sheriff Deputy explained that the area in which Petway was seated was considered part of Judge Breaux's chambers. In fact, to get to the area in which Petway was seated, Petway would have had to enter through a glass door to the right of which indicated that she was entering the chambers of Judge Alison Breaux.

(*Id.*)[3] Petway was "shackled" and then "held for hours[.]" (*Id.*) During this time, Petway requested medical attention for injuries sustained during the arrest. (*Id.*) "Only after a prolonged delay was [Petway] taken to the hospital[.]" (*Id.*) Petway "sustained visible bruising on her body as a result of" the arrest. (*Id.*)[4]

At the time Petway filed this complaint, her "confidential medical records remain[ed] posted publicly on the docket without redaction." (*Id.*) Despite Petway's "multiple motions requesting redaction," the Summit County Court of Common Pleas "failed to take corrective action." (*Id.*) She alleges that this violates "privacy protections recognized under the Ohio Revised Code, including provisions prohibiting the disclosure of protected medical information." (*Id.*)

Petway brings various claims against Magistrate Dailey, Deputy Mason, and Summit County. Summit County challenges two of these claims: Count 4, a claim under Ohio law for violation of privacy rights, and Count 5, a claim for municipal liability under *Monell*. (*Id.*) The remainder of Petway's claims, Counts 1, 2, 3, and 6, are § 1983 claims against either Magistrate Dailey, Deputy Mason, or defendants collectively. (*Id.*) By way of relief, Petway seeks compensatory and punitive damages, declaratory and injunctive relief, and costs and attorneys' fees. (*Id.*)

---

[3] To the extent Petway's complaint suggests otherwise, the video filed by Magistrate Dailey shows that deputies did not immediately arrest Petway after arriving in chambers. Over a period of at least 15 minutes, deputies listened to Petway's concerns and suggested avenues for addressing those concerns, such as filing a motion at the clerk's office. (*See* Doc. No. 16 (timestamps 0:00 to 15:10).) Only after that point did the deputies step out and speak with a sergeant. (*See id.* (timestamp 16:31).) That sergeant then spoke to Petway, informing her that she was in an area considered part of chambers; that she could no longer stay there; that she could sit just outside chambers in the hallway; and that, if she did not leave chambers, he would "criminally trespass" her, take her jail, and likely charge her with "obstruction." (*See id.* (timestamp 18:55).) Petway did not comply. The sergeant warned her again, Petway did not respond or comply, and the deputies proceeded to arrest her. (*See id.* (timestamp 19:40).) Again, while the Court may consider the video to the extent it blatantly contradicts any of Petway's allegations, *see Bell*, 37 F.4th at 364, it need not do so here because these events have no effect on the analysis.

[4] As the Court previously noted (Doc. No. 30, at 3 n.5), although the complaint refers to several exhibits, it does not appear Petway filed any with her complaint. That includes purported photographs of her injuries. (Doc. No. 1, at 2.)

## II. STANDARD OF REVIEW

Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." When defendants move for judgment on the claims against them, the standard of review for a motion for judgment on the pleadings is generally the same as for a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6). *See JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (citation omitted). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* (quotation marks and citation omitted). The district court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citation omitted).

To survive a defendant's motion for judgment on the pleadings, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quotation marks and citations omitted) (emphasis in original). "The motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of

law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991) (citation omitted).

In ruling on a Rule 12(c) motion, the Court considers all available pleadings and may also consider: "(1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion for judgment on the pleadings that are referred to in the complaint and are central to the [non-movant's] allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice." *Dudek v. Thomas & Thomas Att'ys & Couns. at L., LLC*, 702 F. Supp. 2d 826, 832 (N.D. Ohio 2010) (citations omitted).

*Pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365, 102 S. Ct. 700, 70 L. Ed. 2d 551 (1982) (per curiam), but the lenient treatment generally accorded *pro se* pleadings "has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (citation omitted). To avoid dismissal, even *pro se* complaints must meet basic federal pleading requirements and set forth allegations sufficient to state a plausible claim for relief. *See Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (citations omitted). And, although Petway did not file a response to Summit County's motion, the Court must still address the merits of the motion and will not grant it solely because it is unopposed. *See Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991) (citations omitted).

## III. DISCUSSION

Summit County asks the Court to dismiss claims against it for municipal liability under *Monell* (Count 5) and violation of privacy rights under Ohio law (Count 4). The Court addresses these in turn.

### A. *Monell* Claim

Under "Count Five – Municipal Liability (Monell Claim)," Petway alleges that "Summit County is liable because the violations occurred pursuant to [Summit County's] policies, practices, and failure to supervise and train its officials adequately." (Doc. No. 1, at 2.)

To successfully assert a *Monell* claim, a plaintiff must show one of the following:

> (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Kovalchuk v. City of Decherd, Tennessee*, 95 F.4th 1035, 1038 (6th Cir. 2024) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)). A plaintiff must also show that, "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Id.* (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)) (emphasis in original).

Petway does not allege facts to support any of the *Monell* elements. She identifies no illegal official policy or legislative enactment; no official with final decision-making authority ratifying illegal actions; no policy of inadequate training or supervision; and no custom tolerating or acquiescing to federal rights violations. Nor does Petway plead any facts supporting the inference that Summit County was the "moving force" behind her alleged injuries. Petway's only allegations addressing *Monell*—that "the violations occurred pursuant to [Summit County's] policies, practices, and failure to supervise and train its officials adequately"—are nothing more than

conclusory legal claims. (Doc. No. 1, at 2.)[5] As noted, "[t]hreadbare recitals of the elements" are not enough to plead a claim for which relief can be granted. *See Ashcroft*, 556 U.S. at 678. Petway has also described "a single incident, and without more, that is typically not enough to impose *Monell* liability either." *Lester v. Louisville/Jefferson Metro Gov't*, No. 3:24-CV-721-RGJ, 2025 WL 2654964, at *4 (W.D. Ky. Sept. 16, 2025) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985)). For those reasons, Petway's *Monell* claim must be dismissed.

To the extent Petway also alleges claims against Summit County under Counts 1, 2, 3, and 6, those claims must be dismissed as well. Each of these claims allege § 1983 violations based on the conduct of Magistrate Dailey or Deputy Mason. (*See* Doc. No. 1, at 2.) But "[a] municipality cannot be held liable under § 1983 simply because it employs a tortfeasor, nor can it be liable 'for an injury inflicted solely by its employees or agents.'" *Kovalchuk*, 95 F.4th at 1038 (quoting *Monell*, 436 U.S. at 694). Because Counts 1, 2, 3, or 6 only alleged individual acts without alleging any kind of municipal liability, those counts do not state a plausible claim for relief against Summit County.

**B. Violation of Privacy Rights**

Under "Count Four – Violation of Privacy Rights (Ohio Law)," Petway alleges that "[d]efendants failed to redact [her] confidential medical records from public court filings, in

[5] Elsewhere in her complaint, Petway alleges that Deputy Mason violated her rights while "acting under the direction of . . . [Magistrate] Dailey[.]" (Doc. No. 1, at 2.) To the extent Petway intended this to support a *Monell* claim, it does not. Magistrate Dailey's decision to summon the sheriff's office could hardly be characterized as a "policy" of the county or an exercise of final policymaking authority. *See J.H. v. Williamson Cnty., Tenn.*, 951 F.3d 709, 721–22 (6th Cir. 2020) (judge's order that juvenile remain in segregation did not create municipal liability); *Johnson v. Turner*, 125 F.3d 324, 335–36 (6th Cir. 1997) ("[T]he alleged unconstitutional actions taken by the juvenile court judge are not 'policies' of the county for which liability could attach under *Monell*[.]").

violation of Ohio statutory protections and [her] right to privacy." (Doc. No. 1, at 2.) Despite "multiple motions requesting redaction," Petway alleges that the Summit County Court of Common Pleas had "failed to take corrective action," and on the date of the incident, Magistrate Dailey had said this matter would not be addressed until a later date. (*Id.*)

These allegations do not state a plausible or even cognizable claim. Petway cites no authority under Ohio law holding that Summit County is responsible for redacting medical records filed on its public docket. The Court knows of no such authority.[6] As a result, the Court "cannot discern any cognizable cause of action" based on Petway's allegations regarding her medical records. *Green v. Ally Fin., Inc.*, No. 1:25-cv-117, 2026 WL 874637, at *3 (S.D. Ohio Mar. 31, 2026). Even for *pro se* plaintiffs, "courts should not have to guess at the nature of the claim asserted." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (citation omitted). A complaint "must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996) (quotation marks and citations omitted). Because this claim falls below those standards, it must be dismissed.

Ohio recognizes four common law causes of action for invasion of privacy. *See Welling v. Weinfeld*, 866 N.E.2d 1051, 1053, 1059 (Ohio 2007). Of those, only one potentially applies: "the publicizing of one's private affairs with which the public has no legitimate concern."[7] *Id.* at 1053. To prevail on this claim, a plaintiff must show that "(1) that there has been a public disclosure; (2)

---

[6] Summit County's local rules indicate that parties are responsible for redacting their own filings. *See* Summit Cnty. R. Prac. & P. 7.04(E)(2), https://www.akronlegalnews.com/rules_of_court/common_pleas/general_division_07 (last visited Sept. 28, 2026) ("Filing parties and/or legal counsel shall not include personal and private information in any document filed with the Court unless such inclusion is necessary and relevant to the case.").

[7] The remaining three invasion of privacy torts are "unwarranted appropriation or exploitation of one's personality," "the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities[,]" and "giv[ing] publicity to a matter concerning another that places the other before the public in a false light . . . ." *Welling*, 866 N.E.2d at 1053, 1059.

that the disclosure was of facts concerning the private life of an individual; (3) that the matter disclosed would be highly offensive and objectionable to a reasonable person of ordinary sensibilities; (4) that the disclosure was intentional; and (5) that the matter publicized is not of legitimate concern to the public." *Irvine v. Akron Beacon Journal*, No. 20804, 2002 WL 1371184, at *4 (Ohio Ct. App. June 26, 2002) (citing *Killilea v. Sears, Roebuck & Co.*, 499 N.E.2d 1291 (Ohio Ct. App. 1985)).

Petway's allegations do not support one or more of these elements. Her complaint includes no factual allegations supporting the inference that *Summit County* intentionally disclosed her medical records, or even that *Summit County* was the entity that disclosed them. Indeed, a review of the docket in the underlying case supports that it was Petway or someone acting on her behalf who filed the documents with the personal information about which Petway complains. (Doc. No. 33-1 (docket printout).)[8] Indeed, the state court found on September 19, 2025, the date Petway filed this action, "the only references to Plaintiff's medical information or records that can be found on the docket are contained in documents filed by the Plaintiff." Order Granting in Part and Denying in Part Plaintiff's Motion, *Petway v. White*, No. CV-2024-08-3524 (Summit Cnty. Ct. Comm. Pl. Sept. 19, 2025).[9]

[8] Although Petway does not identify the underlying case name or number in her complaint, the case identified in Summit County's motion is the only one both filed before this incident and naming Petway as a party. *See* Search By Name, *Summit County Clerk of Courts*, https://clerk.summitoh.net/PublicSite/SearchByName.aspx (Last Name: "Petway", First Name: "Devon") (last visited Sept. 24, 2026); *see also Granader v. Pub. Bank*, 417 F.2d 75, 82 (6th Cir. 1969) ("Federal courts may take judicial notice of proceedings in other courts of record.").

[9] Even if Petway alleged the intentional tort of invasion of privacy and sought damages, Summit County would be immune on statutory grounds. *See* Ohio Rev. Code § 2744.03(A)(1) (political subdivision immune "if the employee involved was engaged in the performance of a judicial [or] quasi-judicial . . . function"); *see also id.* § 2744.02(A)(1) (political subdivision immune for acts or omissions in connection with a "governmental function"); *id.* § 2744.01(C)(1)(f) (governmental functions includes "[j]udicial" and "quasi-judicial" functions).

## IV. CONCLUSION

For the reasons stated above, Summit County's motion for judgment on the pleadings (Doc. No. 33) is **GRANTED**, and all claims against Summit County are **DISMISSED**.

* * *

With the claims against Magistrate Dailey and Summit County now dismissed, only the claims against Deputy Mason remain. It does not appear from the record, however, that Deputy Mason has been served. (01/28/2026 Notice.) "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). A court may extend the time for service if the plaintiff shows good cause. *Id.*; *see United States v. Oakland Physicians Med. Ctr., LLC*, 44 F.4th 565, 569 (6th Cir. 2022) (listing relevant factors). Accordingly, Petway is directed to show cause **within 14 days of this order** why this action should not be dismissed without prejudice as to Deputy Mason for failure to perfect timely service in accordance with Rule 4(m).

**IT IS SO ORDERED**.

Dated: September 29, 2026

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**